jp

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| STORMONT-VAIL REGIONAL MEDICAL CENTER, | ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 08-4065-JAR |
| KATHLEEN SEBELIUS, SECRETARY OF HEALTH AND HUMAN SERVICES, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

This case requires the Court to review the decision of the Provider Reimbursement Review Board ("PRRB") to decline to exercise jurisdiction over plaintiff hospital's appeal of Medicare reimbursement issues. This matter has been raised before the Court upon a motion for summary judgment.[1] Following <u>Olenhouse v. Commodity Credit Corp.</u>, 42 F.3d 1560 (10th Cir. 1994), the Court has ruled that summary judgment is inappropriate, but that the briefs in support of the summary judgment motion shall be considered in deciding whether the PRRB's decision, as adopted by defendant, should be affirmed or reversed.[2] Also before the Court are defendant's Motion for Leave to File Surreply (Doc. 29) and plaintiff's Motion to Supplement Record (Doc. 35).

The rules in effect at the time of the PRRB's decision allowed for issues to be added to

---

[1] (Doc. 18.)

[2] (Doc. 34.)

timely and jurisdictionally proper appeals. In this case, the PRRB decided that the issues plaintiff attempted to add to a pending appeal had been settled as a component of a broader question plaintiff previously raised on appeal. Therefore, the PRRB declined to exercise jurisdiction over the appeal as modified. Ultimately, the question before the Court is whether the PRRB's holding as to the scope of the settlement is arbitrary and capricious.

Prior to reaching this question, the Court grants defendant's motion for leave to file a surreply to plaintiff's response in opposition to defendant's brief.[3] The Court believes that plaintiff's reply brief contains sufficiently new argumentation and information to justify a surreply. The Court denies plaintiff's motion to supplement the record.[4] The Court does not believe the proposed supplemental authority is sufficiently relevant to the jurisdictional issue in this case to warrant its addition to the record.

## I. Medicare reimbursement process

Medicare is a federal health insurance program that pays for covered medical care primarily to aged and disabled persons. Hospitals which participate in the Medicare program receive reimbursement from the federal government in accordance with a provider agreement. Medicare's payments to hospitals for inpatient operating costs are based upon predetermined rates. These rates are subject to certain adjustments. One such adjustment is the Disproportionate Share Hospital adjustment ("DSH adjustment"), which has multiple components. Generally speaking, the DSH adjustment relates to the amount of hospital care given to low-income patients. One of the factors which must be calculated to determine the DSH

---

[3]Doc. 29.

[4]Doc. No. 35.

2

adjustment is the Medicaid Fraction, sometimes called the Medicaid Proxy.

To understand the Medicaid Fraction and the issues in this case, it is helpful to know that state Medicaid programs may not be completely congruent with federal Medicaid requirements. This is explained generally in <u>Legacy Emanuel Hospital and Health Center v. Shalala</u>,[5]:

> Medicaid is a cooperative federal-state program that provides health care to indigent persons who are aged, blind, or disabled, or members of families with dependent children. 42 U.S.C. §§ 1396 <u>et seq.</u> The program is jointly financed by the federal and state governments, and administered by the states according to the federal guidelines. <u>Id.</u>; 42 C.F.R. § 430.0. States are required to cover specific medical services, and at their option may cover additional services. 42 U.S.C. § 1396d(a). Medicaid also specifies categories of persons that must be covered and allows the states the option of covering additional specified categories. 42 U.S.C. § 1396a(a)(10). Each state participating in the Medicaid program must submit a state plan that meets the broad requirements imposed by the statutes and regulations. 42 U.S.C. § 1396a. Within those broad requirements, however, states are given discretion to determine the type and range of services covered, the rules for eligibility, and the payment levels for services. 42 C.F.R. § 430.0. For example, eighteen states place a limit on the number of days of a hospital stay for which Medicaid will pay. As a result, Medicaid programs vary from state to state, both with respect to persons covered, and scope and duration of covered services.[6]

In other words, a state Medicaid program may include a plan for covering persons and services which are not required to be covered by the federal Medicaid statute and regulations, as well as a plan for covering persons and services which are required to be covered by federal guidelines. In Kansas, the state MediKan program, K.S.A. 39-708c(a) and (s), is a state-funded program which covers persons who are not required to be covered under federal Medicaid guidelines.[7]

---

[5]97 F.3d 1261 (9th Cir. 1996).

[6]*Id.* at 1262.

[7]*See United States v. Franklin-El*, 555 F.3d 1115, 1120 (10th Cir. 2009) ("MediKan is a state program similar in some ways to Medicaid, but with different enrollment criteria and stricter limitations on services."); *Kan. Hosp. Ass'n v. Whiteman*, 835 F. Supp. 1556, 1560 n.2 (D. Kan. 1993) ("MediKan is the state-funded medical assistance program for beneficiaries of the state welfare program known as General Assistance.").

3

The Medicaid Fraction is the number of hospital patient days for patients "eligible for medical assistance under a State plan approved under subchapter XIX of this chapter [Medicaid], but who were not entitled to benefits under part A of this subchapter [Medicare]", divided by the total number of hospital patient days.[8] In litigation relating to the Medicaid Fraction, an issue has arisen as to whether patients "eligible for medical assistance under a State plan approved" under Medicaid includes persons who are eligible for or receive benefits under state plan provisions which exceed the requirements of federal Medicaid guidelines. This issue involves reimbursement for so-called "general assistance" days.

To receive reimbursement from the Medicare program, participating hospitals file cost reports at the end of each fiscal year with an assigned fiscal intermediary. An intermediary, such as Blue Cross in this case, audits a hospital's cost report and issues a Notice of Program Reimbursement ("NPR") which sets forth the intermediary's final determination of the hospital's reasonable cost of services to Medicare beneficiaries. If the hospital is dissatisfied with the NPR, it may file an appeal with the PRRB. The PRRB is a governmental tribunal within the Department of Health and Human Services which decides Medicare reimbursement disputes. A hospital may file an individual appeal regarding multiple issues involving a fiscal year's NPR. A hospital may also join a group of other hospitals in an appeal of a single issue involving a fiscal year's NPR. It is also possible for hospitals to transfer an issue from an individual appeal to a group appeal.

The Administrator of the Centers for Medicare and Medicaid Services (CMS) may review the decision of the PRRB. If a hospital is dissatisfied with the decision of the PRRB and

---

[8]42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

the CMS Administrator, the hospital may ask for review by a federal district court.[9]

As previously stated, this case is now before the Court upon plaintiff's Complaint seeking review of a PRRB decision. Plaintiff asks this Court to reverse a PRRB decision holding that the PRRB did not have jurisdiction over issues plaintiff added to an individual appeal and then transferred to a group appeal.

## II. PRRB jurisdiction

The jurisdictional provisions for hospital hearings before the PRRB are contained in 42 U.S.C. § 1395oo(a):

> Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by the Provider Reimbursement Review Board . . . if - -
> (1) such provider - -
> (A)(i) is dissatisfied with a final determination of the organization serving as its fiscal intermediary . . . as to the amount of total program reimbursement due the provider for the items and services furnished to individuals for which payment may be made under this subchapter for the period covered by such report . . .
> (2) the amount in controversy is $10,000 or more, and
> (3) such provider files a request for a hearing within 180 days after notice of the intermediary's final determination . . .

The Supreme Court has held that "a provider's dissatisfaction with the amount of its total reimbursement is a condition to the Board's jurisdiction."[10]

## III. Factual background

In January 1997, plaintiff hospital filed a timely individual appeal of the NPR for the fiscal year ending 1994. This was Case No. 97-0633 before the PRRB. The request for hearing

---

[9] 42 U.S.C. § 1395oo(f)(1).

[10] *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 404 (1988).

5

plaintiff filed listed two issues in controversy:

> The item in dispute and for which a hearing is requested is the intermediary's calculation of the disproportionate share adjustment. First, the intermediary disallowed patient days associated with patients who were eligible for Medicaid benefits. Second, the intermediary added back to total patient days those days applicable to employees covered under the Medical Center's self-insured health plan and for which there was unrecovered cost.[11]

Plaintiff further described the substance of the first issue as follows:

> The Kansas Medicaid program pays for inpatient services using a DRG ["diagnosis-related groups"] payment methodology. When a patient eligible for Medicaid benefits is admitted with dual coverage with private insurance, i.e. car insurance, the State's payment policy is to limit the payment to the difference between what the State would have paid under the DRG and what the private insurance paid. If private insurance pays more than the DRG limit, then the State does not make a payment.
>
> When filing the cost report, the Medical Center included patient days for those inpatient stays where the patient was eligible for Medicaid, but the State Medicaid program did not make a payment because the private insurance payment exceeded the DRG limit.
>
> According to the intermediary's audit adjustment report, these days were disallowed in accordance with CFR 42 § 412.106. However, the Board and the Fourth, Sixth, Eighth and Ninth Circuit Court of Appeals have found CFR 42 § 412.106 to be contrary to the intent of Congress as expressed at 42 U.S.C. § 1395ww(d)(F)(vi)(II).[12]

Thus, the first issue related to inpatient stays where the patients were eligible for Medicaid benefits but the state Medicaid program did not make a payment to the hospital. The second issue, which is the self-insured days issue, is not relevant to this case, except that it remained pending after the Medicaid eligible but unpaid days issue was settled. The PRRB had jurisdiction to decide this appeal when it was filed. This is undisputed.

While plaintiff's appeal was pending, the CMS instituted a change in policy sometimes

---

[11](Administrative Record ("AR") at 522.)

[12](AR at 523.)

referred to as "Ruling No. 97-2."[13] Ruling No. 97-2 allowed for the consideration of Medicaid eligible but unpaid days.

> Under the new interpretation, the Medicare disproportionate share adjustment under the hospital inpatient prospective payment system will be calculated to include all inpatient hospital days of service for patients who were eligible on that day for medical assistance under a State Medicaid plan in the Medicaid fraction, whether or not the hospital received payment for those inpatient hospital services.[14]

The ruling was made in accordance with the decisions of four circuit courts of appeal.[15] In conformity with this ruling, the Intermediary approved a partial administrative resolution of plaintiff's Medicaid eligible but unpaid days issue. On May 28, 1998, the Intermediary notified plaintiff as follows:

> The above referenced . . . has been approved for a Partial Administrative Resolution concerning the issue
> of Medicaid eligible days as defined in HCFA Ruling No. 97-2.
>
> Please advise the PRRB Board that you have agreed to this partial administrative resolution and are dropping this portion of your facility's appeal issue.[16]

This is the only "settlement" document that the parties have referenced. There is no indication that a release of other potential issues was signed as part of the settlement.

This partial resolution, or settlement, permitted plaintiff to submit an increased number of days (the so-called Medicaid eligible but unpaid days) for reimbursement. The Intermediary then issued a revised NPR which reflected the inclusion of 14,959 Medicaid eligible but unpaid

---

[13](AR 1204-05; *see also* Doc. 23, Ex. 8.)

[14]*Id.*

[15]*Cabell Huntington Hosp., Inc. v. Shalala*, 101 F.3d 984, 988 (4th Cir. 1996); *Deaconess Health Servs. Corp. v. Shalala*, 83 F.3d 1041 (8th Cir. 1996); <u>Legacy Emanuel Hosp. & Health Ctr. v. Shalala</u>, 97 F.3d 1261, 1266 (9th Cir. 1996); *Jewish Hosp., Inc. v. Sec'y of Health & Human Servs.*, 19 F.3d 270, 276 (6th Cir. 1994).

[16](A.R. at 526.)

7

days as part of the DSH adjustment. This was on June 10, 1998.

Approximately two years later, on June 16, 2000, plaintiff submitted a letter to the PRRB which added issues to its individual appeal (Case No. 97-0633) and then transferred the issues to a group appeal (Case No. 98-2694G).[17] The issues were described as follows:

> The intermediary, contrary to regulation, failed to include as Medicaid-eligible days services to patients eligible for Medicaid, as well as patients eligible for general assistance.[18]

The Court construes this letter as raising two issues, Medicaid-eligible days and "general assistance" days in relation to the DSH adjustment.

On July 6, 2000, the Intermediary via a letter to the PRRB questioned whether the PRRB should exercise jurisdiction over the added issues, but for separate reasons.[19] The Intermediary argued that the Medicaid eligible days issue had already been administratively resolved regarding plaintiff for that fiscal year. The Intermediary further argued that plaintiff had never identified nor documented any so-called "general assistance" days and that the Intermediary had not disallowed any such days.[20] According to the Intermediary:

> Transmittal A-99-62 specifically prohibits the inclusion of GA days in a provider's ratio unless a jurisdictionally proper appeal had been filed for the issue prior to October 15, 1999. Accordingly, the issue is not a valid issue for an appeal.[21]

The PRRB did not respond to the Intermediary's letter immediately, but granted

---

[17]The individual appeal was still pending because the self-insured issue had not been formally resolved.

[18](AR at 542.)

[19](AR at 539.)

[20]*Id.*

[21]*Id.*

8

plaintiff's request to close plaintiff's individual appeal, Case No. 97-0633.[22] On August 16, 2000, plaintiff responded to the Intermediary's letter and asserted that jurisdiction was proper pursuant to 42 C.F.R. § 405.1841, which permits providers "[p]rior to the commencement of the hearing proceedings" to "identify . . . additional aspects of the [Intermediary's] determination with which it is dissatisfied."[23] Plaintiff noted that its request to add the issues predated the hearing scheduled for July 6, 2000 and that the earlier administrative resolution "did not include Medicaid days where the denials were for reasons other than eligibility."[24]

On January 31, 2007, the Intermediary filed a formal jurisdictional challenge relating to the group appeal which plaintiff joined. The Intermediary contended that plaintiff should not be permitted to participate in the "eligible days" group appeal because plaintiff and the Intermediary reached an agreement in February 1998 that "fully settled the Medicaid eligible days issue for Medicare DSH in accordance with HCFAR Ruling 97-2" and led to a revised NPR.[25] The Intermediary asserted that plaintiff was reneging upon the settlement agreement.[26] This jurisdictional challenge made no explicit reference to "general assistance" days. Plaintiff responded (incorrectly it appears) that plaintiff was appealing from the revised NPR.[27]

## IV. **PRRB decision**

---

[22](AR at 537.)

[23](AR at 535.) The Secretary revised the regulations governing practice and procedure before the PRRB on May 23, 2008. 73 Fed. Reg. 30190. Section 405.1841(a)(1) is no longer in force, but the new rules do not govern this case.

[24]*Id.*

[25](AR at 1423.)

[26]*Id.*

[27](AR at 772.)

9

On March 26, 2008, the PRRB ruled that it did not have "jurisdiction over the Medicaid eligible/general assistance days issue for Stormont-Vail, FYE [fiscal year ending] 9/30/1994 in case # 98-2694G."[28] The PRRB stated that plaintiff had a right to challenge a NPR in a hearing before the PRRB if, among other requirements, plaintiff is dissatisfied with the final determination of the Intermediary. The PRRB decided that plaintiff did not meet the dissatisfaction element because plaintiff agreed to the "partial administrative resolution" or, in other words, settlement of the Medicaid eligible days issue.[29] The PRRB rejected plaintiff's contention that plaintiff had added a "new" issue to the appeal. The PRRB explained:

> [T]he Provider now claims that it has added a 'new' issue to its still pending appeal that is distinct from the issue settled in 1998 which allows it to claim additional DSH days not previously claimed. . . .
>
> The Board does not dispute that what is commonly referred to as the Medicaid fraction has been characterized by many providers in their appeals as having various sub-categories of days that all fall under the general heading of 'eligible' days. "General Assistance" days is a common example. Stormont-Vail had the opportunity to specify these sub-categories and settle some but not others just as it did with the 'self-insured' days sub-issue. By choosing to broadly characterize its issue (and the matter settled) as 'eligible' days, any potential subcategories of days not specifically identified that could have been claimed were subsumed by that general description, and the Provider is barred from now making another claim for days due to their being "eligible", regardless of the reason for their eligibility.[30]

The PRRB suggested that a contrary holding would permit a provider to put a "new spin" on a claim to enlarge it after an Intermediary believed the claim was settled, thus discouraging settlements.[31]

---

[28](AR at 2.)

[29](AR at 2-3.)

[30](AR at 3.)

[31](AR at 3-4.)

The PRRB also found that there was no record of an appeal from the revised NPR.[32]  This appears undisputed in the pleadings before this Court, although plaintiff took a different position before the PRRB.

## V. Standard of review

A PRRB decision may be reviewed by a court pursuant to 42 U.S.C. § 1395oo(f)(1).  The Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq., provides the standard of review.[33]  "Under the APA, we may set aside agency action only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."[34] "An agency's decision will be deemed arbitrary and capricious if the agency . . . entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.  Likewise, an agency's decision will be deemed arbitrary and capricious if the agency failed to base its decision on consideration of the relevant factors or if there has been a clear error of judgment on the agency's part."[35]

## VI. Decision on the merits

Plaintiff suggests that it is a post-hoc rationalization or "spin" to contend that the PRRB dismissed the appeal because it found that the issues plaintiff raised had been settled.[36]  The

---

[32](AR at 2.)

[33]*Little Co. of Mary Hosp. v. Sebelius*, 587 F.3d 849, 853 (7th Cir. 2009).

[34]*Via Christi Reg'l Med. Ctr. v. Leavitt,* 509 F.3d 1259, 1271 (10th Cir. 2007) (internal quotations omitted).

[35]*Utah Envtl. Congress v. Troyer*, 479 F.3d 1269, 1280 (10th Cir. 2007)(internal quotations and citations omitted).

[36](Doc. 23 at 11.)

11

Court disagrees. Whether the settlement entered in 1998 covered the issues plaintiff sought to add to the appeal in 2000 is the key question in the Court's mind. The PRRB found that the settlement did cover those issues.

To reiterate, the issues plaintiff sought to add to its PRRB appeal were described as follows:

> The intermediary, contrary to the regulation, failed to include as Medicaid-eligible days services to patients eligible for Medicaid, as well as patients eligible for general assistance.[37]

In plaintiff's reply brief, plaintiff concedes that "the Medicaid eligible days component of the June 16, 2000 request was likely within the scope of the January 1997 appeal," but maintains that "the general assistance days component was by definition excluded from the scope of the previously resolved appeal."[38]

For the following reasons, the Court holds that the PRRB made a clear error of judgment in finding that the "general assistance" days issue was settled in 1998.

**A. The "general assistance" days issue was not raised as part of the original appeal**

"General assistance" days are not mentioned as an issue in the original appeal. The original appeal raised an issue as to Medicaid eligible but unpaid days and an issue regarding self-insured days. Plaintiff's explanation of the Medicaid eligible but unpaid days issue in the January 1997 appeal was set forth as follows:

> The Kansas Medicaid program pays for inpatient services using a DRG payment methodology. When a patient eligible for Medicaid benefits is admitted with dual coverage with private insurance, i.e. car insurance, the State's payment policy is to limit the payment to the difference between what the State would have paid under the DRG and what the private insurance paid. If private insurance pays

---

[37](AR. at 542.)

[38](Doc. 23 at 15.)

> more than the DRG limit, then the State does not make a payment.
>
> When filing the cost report, the Medical Center included patient days for those inpatient stays where the patient was eligible for Medicaid, but the State Medicaid program did not make a payment because the private insurance payment exceeded the DRG limit.
>
> According to the intermediary's audit adjustment report, these days were disallowed in accordance with CFR 42 § 412.106. However, the Board and the Fourth, Sixth, Eighth and Ninth Circuit Court of Appeals have found CFR 42 § 412.106 to be contrary to the intent of Congress as expressed at 42 U.S.C. § 1395ww(d)(F)(vi)(II).[39]

This does not refer to "general assistance" days.

The instructions for making a hearing request before the PRRB urge specificity in identifying issues for appeal:

> Your hearing request must include an identification and statement of the issue(s) you are disputing. You must identify the specific issues, findings of fact and conclusions of law with which the affected parties disagree; and you must specify the basis for contending that the findings and conclusions are incorrect. . . . You must clearly and specifically identify your position in regard to the issues in dispute. For instance, if you are appealing an aspect of the disproportionate share (DSH) adjustment factor or calculation, do not define the issue as "DSH". You must precisely identify the component of the DSH issue that is in dispute.
>
> For Example: Were the Intermediary's adjustment to the number of available beds for disproportionate share (DSH) qualification purposes proper?[40]

It is inconsistent with these instructions to construe the "Medicaid eligible" days issue raised in the original appeal so broadly as to include the "general assistance" days issue plaintiff sought to add to the appeal.

The "general assistance" days issue is whether the Kansas MediKan program (the "general assistance" program in question), which is part of the state Medicaid program but

---

[39](AR at 1446.)

[40](Doc. 22, Ex. 1 at 11.)

13

covers persons who are not eligible for federal Medicaid benefits, should be considered in calculating the Medicaid Fraction. In other words, in the language of § 1395ww(d)(5)(vi)(II), does the MediKan program cover "patients who . . . were eligible for medical assistance under a State plan approved under the [Medicaid] subchapter . . . but who were not entitled to benefits under [Medicare]?" "General assistance" days or MediKan days concern patients who are not eligible for Medicaid benefits required by federal guidelines, but who received or were eligible for state-funded benefits under a program which is part of the State's approved Medicaid program. It may be argued that the patients are "Medicaid eligible" in the sense that they receive state benefits as part of a program which is integrated with the state's approved Medicaid program even though the patients may not be eligible for federally required Medicaid benefits.

The difference between the issue settled in 1998 and the "general assistance" days issue added in 2000 is as follows. The "general assistance" days issue raised in June 2000 relates to the source of potential payment, i.e., whether the source of potential payment must be the federal/state Medicaid program or may it also be a state-operated and state-funded program which is integrated with the state's federally approved Medicaid program. The issue raised in the January 1997 appeal and settled in 1998 relates to whether payment to the hospital is required or merely eligibility for such payment.

Plaintiff's explanation of the issues in the January 1997 appeal should not be construed by the PRRB so broadly as to contain the "general assistance" days issue, particularly in light of the Instructions which ask for specificity in describing an issue on appeal. Since the "general assistance" days issue was not raised on appeal prior to 2000, it was not settled in 1998 because the settlement language does not describe a general settlement of all potential issues concerning the DSH adjustment or the Medicaid eligible days issue.

14

## B. "General assistance" days are not addressed in the settlement

The settlement covered issues addressed in Ruling No. 97-2. Ruling No. 97-2 is not directed at the "general assistance" days issue. The circuit court cases which led to Ruling No. 97-2 also do not discuss the "general assistance" days issue.

Moreover, the Intermediary appeared to recognize that the settlement did not include the "general assistance" days issue. When the Intermediary made its July 6, 2000 response to plaintiff's request to add "two issues" to the appeal, the Intermediary stated that the "Medicaid-eligible days services to patients eligible for Medicaid" was settled in accordance with Ruling No. 97-2.[41] Although the Intermediary also opposed adding the "general assistance" days issue to plaintiff's individual appeal, the Intermediary did not claim that it was settled in 1998 along with the Medicaid eligible days issue. Instead, the Intermediary argued that plaintiff had not identified or documented the days, that the days had not been excluded by the Intermediary, and that the appeal might be barred under the Medicare program memorandum No. A-99-62.[42] The Intermediary's next response on this matter occurred after the new issues had been transferred from plaintiff's individual appeal to the group appeal. The Intermediary opposed plaintiff participating in the group appeal stating that plaintiff had settled the "Medicaid eligible days issue" in May 1998.[43] The response does not distinguish or make direct reference to the "general assistance" days issue.

It appears clear to the Court that the "general assistance" days issue was not addressed by the settlement.

---

[41] (AR at 539.)

[42] A copy of the memorandum is Exhibit 5 to Doc. 23.

[43] (AR at 1423.)

### C. The PRRB's position on jurisdiction over the "general assistance" days issue is inconsistent with defendant's position in plaintiff's Fiscal Year 1995 Appeal

The PRRB decision under review (which involves the NPR for the fiscal year ending 9/30/94) is inconsistent with the Administrator's decision upon another appeal filed by plaintiff regarding a revised NPR for the fiscal year ending 9/30/95. This is <u>Stormont Vail Health Care v. Blue Cross Blue Shield Ass'n</u>, Review of: PRRB Dec. No. 2007-D6 (Jan. 26, 2007).[44]

During the course of litigating the FY 1995 Appeal, plaintiff signed a settlement agreement which called for the Intermediary to reopen plaintiff's cost report and apply the provisions of Ruling No. 97-2. The Intermediary issued a revised NPR which included extra Medicaid eligible days which were part of the settlement discussions. It is important to note that the above-cited Administrator's decision relates to plaintiff's appeal from a <u>revised</u> NPR.

Plaintiff appealed from the revised NPR and contended that more Medicaid eligible days had been verified and should be added. This appeal from the revised NPR for fiscal year 1995 included the same issue plaintiff is trying to raise regarding the 1994 fiscal year NPR, among other issues. Plaintiff asserted in the 1995 Appeal that the formula for the DSH adjustment should include "general assistance" days or services to patients eligible under MediKan as "Medicaid eligible days." The PRRB accepted jurisdiction over the appeal and remanded the matter to the Intermediary for inclusion of any additional Medicaid eligible days consistent with Ruling 97-2.[45] It should be noted that the PRRB did not state that "general assistance" days <u>were</u> consistent with Ruling No. 97-2.

---

[44](Doc. 23, Ex. 9.)

[45]*Stormont-Vail Health Care v. Blue Cross Blue Shield Ass'n*, PRRB Hearing Dec. No. 2007-D6, Case No. 04-0575 (Nov. 30, 2006) attached to Doc. 19 as Ex. 2.

16

The Administrator for CMS overturned the PRRB's decision on January 26, 2007. The Administrator found that the PRRB did not have jurisdiction to consider plaintiff's appeal from the revised NPR because plaintiff was not arguing that it was dissatisfied with the revised NPR or any issue raised in connection with the revised NPR. Instead, according to the Administrator's holding, plaintiff was attempting to raise an issue which was not raised prior to the revised NPR. The Administrator stated:

> In accordance with the terms of the settlement agreement, [plaintiff] submitted its list of Medicaid eligible, unpaid days on June 23, 2003. The Intermediary, also in accordance with the settlement agreement, on July 25, 2003 promptly issued a revised NPR making payment for all the days requested in [by plaintiff]. . . . The matter of the additional days [those days, including the MediKan days, requested in plaintiff's 2004 appeal] was never raised or requested by [plaintiff] prior to the issuance of the revised NPR and, likewise, was not addressed by the Intermediary's determination as reflected in the revised NPR. Thus, these days were not part of the separate and distinct determination which comprises the revised NPR that is basis for any [PRRB] review.[46]

This reasoning is inconsistent with the PRRB decision in this case. The Administrator's decision was based upon rules regarding the appeal or reopening of revised NPRs. Those rules prohibit reopening revised NPRs on matters which were not adjusted or considered in the revised NPR. According to the Administrator in the FY 1995 Appeal, the "general assistance" days issue was not adjusted or considered prior to the issuance of the NPR revised in accordance with the settlement under Rule No. 97-2. Therefore, plaintiff could not be dissatisfied with the revised NPR on that issue and could not appeal or reopen the NPR on that basis. In contrast, the PRRB's decision in this case is that the "general assistance" days question should be considered part of the settlement of the Medicaid eligible days issue pursuant to Ruling No. 97-2.

**D. Policy concerns are not relevant to the determination of the scope of the**

---

[46](Doc. 23, Ex. 9 at 6.)

**settlement**

The PRRB mentioned "policy implications" to support its interpretation of the settlement. The PRRB stated:

> It is clear from the Intermediary's correspondence that it entered into the settlement with the understanding that the eligible days issue was settled and would be withdrawn. Like the Federal and State courts, most PRRB cases settle. The Intermediary deserves to know what it is settling. Allowing the Provider to put a "new spin" on a claim to enlarge it after the Intermediary has agreed to settle, would discourage settlement, upend any notion of finality that a settlement brings and create an overwhelming administrative burden.[47]

In general, when interpreting a settlement agreement a court applies the traditional principles of contract interpretation.[48] This means trying to give effect to the parties' intent as expressed in the agreement's language.[49]

Both sides deserve to know what issues are being settled in a settlement agreement. The best way to determine that is from the language of the agreement. The language of the settlement agreement in this matter does not appear to cover the "general assistance" days issue. If the parties had intended to make a global settlement of any issue which had or could be raised in relation to calculating the Medicaid Fraction or the DSH adjustment or even "Medicaid eligible days," that language presumably could have been inserted in the settlement;[50] yet, it was not.

In reviewing this case, the Court has learned about the large number of cases before the

---

[47](AR at 3-4.)

[48]*Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1266 (10th Cir. 2002) (involving a consent decree).

[49]*See Stichting Mayflower Recreational Fonds v. Newpark Res., Inc.*, 917 F.2d 1239, 1246 (10th Cir. 1990).

[50]Broad settlement language appeared to win the day for the Secretary in *Hoag Memorial Hospital Presbyterian v. Sullivan*, No. 91-5095-CBM, 1993 WL 122275 (C.D. Cal. Mar. 9, 1993).

18

PRRB. The problems of a large docket however, should not influence how a settlement agreement is interpreted. The intent of the parties as determined from the language of the settlement agreement indicates to the Court that the "general assistance" days issue was not settled.

## VII. Conclusion

The Court has been asked to review the PRRB's decision "that it does not have jurisdiction over the Medicaid eligible/general assistance days issue for Stormont-Vail, FYE [fiscal year ending] 1/30/1994 in case # 98-2694G."[51] For the above-stated reasons, the Court believes that the PRRB made a clear error of judgment in deciding that the "general assistance" days issue had been settled in 1998 and that it did not have jurisdiction to consider that issue when the issue was added to plaintiff's individual appeal and then transferred to a group appeal. Therefore, the PRRB's decision as adopted by defendant is reversed with respect to the jurisdictional determination upon the "general assistance" days issue.

Plaintiff concedes that its original January 1997 appeal "fell squarely within the parameters of [Ruling No.] 97-2" and that its June 2000 request to add the issue of "Medicaid-eligible days services to patients eligible for Medicaid . . . was likely within the scope of the January 1997 appeal."[52] The Court affirms the PRRB's decision to decline jurisdiction on this issue on the grounds of settlement, as conceded by plaintiff.[53]

---

[51] (AR at 2.)

[52] Doc. No. 23 at p. 15.

[53] The substantive question of whether "general assistance" days constitute "Medicaid eligible" days for the purposes of the Medicaid Fraction is not a question before this Court. Our holding is based mainly upon the PRRB's construction of the settlement which was pivotal to the PRRB's decision to decline to exercise jurisdiction.

19

**IT IS THEREFORE ORDERED BY THE COURT** that the PRRB's decision, as adopted by defendant, is **affirmed in part and reversed in part**. The decision is affirmed with respect to the PRRB's decision to decline jurisdiction on the issue of "Medicaid-eligible days services to patients eligible for Medicaid," as conceded by plaintiff. The decision is reversed with respect to the jurisdictional determination upon the "general assistance" days issue. This matter is remanded to defendant for further proceedings consistent with this opinion.

**IT IS FURTHER ORDERED BY THE COURT** that defendant's motion for leave to file a surreply (Doc. 29) is **granted** and plaintiff's motion to supplement the record (Doc. 35) is **denied**.

**IT IS SO ORDERED.**

Dated: March 22, 2010

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE